UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

    Plaintiff,

- against -

AMERICAN TELECOMMUNICATIONS,
INC. CHILE S.A.,

    Defendant.



**OPINION AND ORDER**

06 Civ. 6825 (PKL)

**APPEARANCES**

DEBORAH SKAKEL, ESQ.
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Attorneys for Plaintiffs

NEIL EDWIN MCDONELL, ESQ.
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177

Attorneys for Defendant

**LEISURE, District Judge:**

Plaintiff Comverse, Inc. ("Comverse") moves the Court, by way of an order to show cause, for an order (a) compelling defendant American Telecommunications, Inc. Chile S.A. ("ATI") to proceed with the pending arbitration (the "Pending Arbitration") between the two parties and (b) enjoining ATI from prosecuting the action it initiated in the Tribunal de Defensa de la Libre Competencia (the "Chilean Competition Tribunal") as well as from commencing or prosecuting, in any other jurisdiction, any other court proceeding arising out of Comverse and ATI's Value Added Reseller Agreement (the "VAR"). For the reasons that follow, Comverse's motion is denied.

## BACKGROUND

Comverse, an American company, is a provider of software and telecommunications systems. ATI is a Chilean company that distributes telecommunications products. (1st Am. Compl. ¶¶ 3, 4.) On or around July 22, 2004, Comverse and ATI entered into the VAR, in which they agreed that ATI would serve as an international reseller of equipment and software provided by Comverse. (1st Am. Compl. ¶¶ 3, 4, 8.) The VAR contains an arbitration provision that reads in pertinent part: "Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York

in accordance with the then prevailing Rules of the American Arbitration Association." (1st Am. Compl. Ex. A § 23.8.)

On July 26, 2006, Comverse instituted arbitration proceedings against ATI alleging various breaches of the VAR. As of September 27, 2006, the date of Comverse's First Amended Complaint, the arbitration panel had still not been fully constituted. (1st Am. Compl. ¶ 14). On September 13, 2006 this Court held a hearing on a previous application for a preliminary injunction by Comverse wherein Comverse sought an order enforcing the non-compete and confidentiality provisions of the VAR while the arbitration panel was being constituted. On September 15, 2006 the parties entered into a confidential agreement and Comverse withdrew its application for the preliminary injunction. (1st Am. Comp. ¶ 27.) On the same day that this Court held a hearing on Comverse's first request for a preliminary injunction, ATI filed a claim (the "Chilean Action") against Comverse Chile SA (an affiliate of Comverse) with the Tribunal de Defensa de la Libre Competencia (the "Chilean Competition Tribunal"), a specialized court in Chile with jurisdiction over competition matters. (Ortúzar Decl. ¶¶ 3, 5, Ex. A.)

ATI's initiation of the Chilean Action serves as a request that the Chilean National Economic Prosecutor -- the Chilean governmental body charged with enforcing Chilean competition law

3

before the Chilean Competition Tribunal, see art. 2, Decreto Ley No. 211, de 1973 (2006) (the "Chilean Competition Law"), (Ortúzar Decl. ¶ 7) — investigate the complaint and decide whether to prosecute the action against Comverse. (See Cruz Decl. ¶ 13g; Skakel Supp. Decl. Ex. A at 14.) It will not result in ATI's claims being taken directly to the Chilean Competition Tribunal. (Cruz Decl. ¶ 13g)  Rather, any prosecution would be conducted by the Chilean National Economic Prosecutor. (See Cruz Decl. ¶ 13g).

ATI also requested that the Chilean Competition Tribunal grant it preliminary injunctive relief (the "Chilean Preliminary Injunction"), namely that it compel Comverse to continue supplying ATI with equipment, software, and services as it had done under the VAR. (See Skakel Supp. Decl. Ex. A at 14.)  The Chilean Competition Law permits for such a proceeding prior to a prosecution, if warranted, being commenced by the Chilean National Economic Prosecutor; the party requesting the injunction may do so on its own. (See Cruz Decl. ¶ 13e.)  The proceedings for the Chilean Preliminary Injunction took place on October 7, 2006 (Trans. Oct. 5, 2006 15:4-8, 23:10-12), four days before Comverse fully presented its arguments in its Reply Memorandum of Law.  On October 12, 2006, the Chilean Competition Tribunal denied ATI's request for the Chilean Preliminary

4

Injunction. (Rol C No. 108-06, Cuaderno de medidas cautelares; see Official Translation No. 10, 18-5/2006.)

There are several substantial similarities between the factual predicates to ATI's claims in the Chilean Action and its counterclaims in the Pending Arbitration. For example, in both the Chilean Action and in the Pending Arbitration, ATI claims that the non-compete provision of the VAR is unenforceable (Skakel Supp. Decl. Ex. A at 14; 1st Am. Comp. Ex. C ¶ 125); that Comverse improperly approached ATI's customers directly (Skakel Supp. Decl. Ex. A at 12, 14; 1st Am. Comp. Ex C ¶ 103-107); and that Comverse improperly solicited ATI's employees to enter its employ (Skakel Supp. Decl. Ex. A at 12, 14; 1st Am. Comp. Ex C ¶ 103-107.)

## DISCUSSION

I. **Order to Compel Arbitration**

Comverse petitions this Court for an order compelling ATI to "proceed with the [Pending Arbitration" in accordance with the arbitration clause of the VAR. (Order to Show Cause for Prelim. Inj. and TRO.) The VAR is an agreement affecting interstate and international commerce. (See Skakel Decl. Ex. A § 3.1.) Accordingly, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2006), governs the arbitration clause of the VAR. See 9 U.S.C. §§ 1-2; Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003)(citing cases). Section

5

4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court...for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; Jacobs v. USA Track & Field, 374 F.3d 85, 88 (2d Cir. 2004). In evaluating a petition to compel arbitration, "the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" Jacobs, 374 F.3d at 88 (quoting Shaw Group Inc., 322 F.3d at 120 see also Laif X Sprl v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir. 2004). Thus, a court can compel arbitration if it finds in the affirmative on both of these issues.

First, neither ATI nor Comverse contests the validity of the arbitration clause in the VAR. Further, both parties have demonstrated that they consider the clause valid through participating in the Pending Arbitration, and ATI has actively furthered the arbitration by asserting its own counterclaims. (See 1st Am. Compl. Ex. C; Tr. Prelim. Inj. Hr'g Sept. 13, 2006 45:8-45:25). According to Comverse, ATI's claims in the Chilean Action "closely parallel" these counterclaims in the Pending Arbitration. (Reply Mem. Law Further Supp. Comverse's 2d Appl'n

Prelim. Inj. ("Reply Mem.") at 5.) As the parties agree that the arbitration agreement is valid, the Court is not in the position to find otherwise.

Second, ATI has not "fail[ed], neglect[ed], or refus[ed]...to arbitrate." 9 U.S.C. § 4. As noted above, both parties are currently engaged in the pending arbitration, and ATI has actively furthered the arbitration. Indeed, Comverse does not dispute that ATI is participating in the arbitration and that ATI's claims in the Chilean Action are "identical" to counterclaims it has submitted to arbitration in the Pending Arbitration. (Reply Mem. at 4 n.2 ("It is undisputed that ATI has been participating in the [Pending Arbitration] and has manifested its intention to continue doing so"); Mem. Law in Supp. of Comverse's 2d Appl'n Prelim. Inj. & Appl'n TRO at 10.) Further, ATI's commencement of the Chilean Action is not in itself a failure, neglect, or refusal to arbitrate. The litigation of certain claims arguably within the scope of the arbitration clause, without an "attendant refusal to arbitrate," does not constitute a failure to arbitrate. Laif X Sprl, 390 F.3d at 199. Because ATI has not failed, neglected, or refused to arbitrate, it is not in breach of its obligation to arbitrate. Accordingly, on the present record, the Court will not compel ATI to arbitrate. See, e.g., Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 725 F.2d 192, 195 (2d Cir. 1984).

7

## II. Preliminary Injunction

Comverse seeks a preliminary injunction enjoining ATI from prosecuting the Chilean Action and from prosecuting any other court proceeding involving claims arising out of or related to the VAR, pending resolution of the dispute in the Pending Arbitration. (1st Am. Compl. at 9.) The power of a federal court "to enjoin foreign suits by persons subject to their jurisdiction is well established." China Trade & Dev. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987). Narrowly viewed, the injunction operates to restrain the litigant rather than purporting to restrain the foreign court directly. See id. However, "principles of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'" Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004)(quoting China Trade, 837 F.2d at 36). This is because "an anti-suit injunction, though directed at the litigants, 'effectively restricts the jurisdiction of the court of a foreign sovereign.'" Laif X Sprl, 390 F.3d at 199 (quoting Paramedics Electromedicina, 369 F.3d at 655.

Notwithstanding the general hesitation to issue a foreign anti-suit foreign injunction, it is well established that in order to obtain a preliminary injunction the movant must show: (a) irreparable harm and (b) either (1) likelihood of success on

8

the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. See Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir. 1993); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979). These elements must be established by a preponderance of the evidence. Shred-It, USA, Inc. v. Mobile Data Shred, Inc., 202 F. Supp. 2d 228, 233 (S.D.N.Y. 2002)(citing Addington v. Texas, 441 U.S. 418, 423 (1979)); see also S.E.C. v. Moran, 922 F. Supp. 867, 889 (S.D.N.Y. 1996). Whether injunctive relief should issue or not "'rests in the sound discretion of the district court....'" Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990)(quoting Thornburgh v. American Coll. of Obstetricians and Gynecologists, 476 U.S. 747, 755 (1986)). This analytic framework applies to a preliminary anti-suit injunction as it does to any other sort of preliminary injunction. See Jam. Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.), 458 F.3d 92 (2d Cir. 2006).

In applying this test, the Court is mindful that, "'[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 433 (2d Cir. 2004)(quoting Weinberger

9

v. Romero-Barcelo, 456 U.S. 305, 312 (1982)). Although this rule is usually applied in actions where a private party seeks to enjoin government action, see, e.g., Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227 (2d Cir. 1998), it also applies to suits between private parties see, e.g., Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d 704 (2d Cir. 1982). See Register.com, 356 F.3d at 424.

The Chilean Action is before the Chilean Competition Tribunal and thus implicates the public interest. The Chilean Competition Law, which provides for the establishment of the Chilean Competition Tribunal, see Chilean Comp. Law, tit. II, (Ortúzar Decl. ¶ 5) charges both the Chilean Competition Tribunal and the National Economic Prosecutor with the application of the Chilean Competition Law in order to safeguard free competition in the markets. See Chilean Comp. Law, art. 2. (Ortúzar Decl. ¶ 5.) The Chilean Competition Court may order any provisional injunctive relief that is necessary to safeguard the common interest. Chilean Comp. Law, art. 26. Moreover, final determinations by the Chilean Competition Tribunal are to be supported in part by the court's economic considerations. Chilean Comp. Law, art. 25. (Cruz Decl. ¶ 8.) Although the determinations of the Chilean Competition Tribunal may well have implications for the private parties involved in proceedings before it, these are incidental to the tribunal's stated purpose

10

of safeguarding the freedom of economic markets in the public interest. See Chilean Comp. Law, arts. 1, 2. (Cruz Decl. ¶ 9.)

### A. Irreparable Harm

"'Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.... Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005)(quoting Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998)); Reuters, Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990). Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." Javaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Further, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative." Reuters, 903 F.2d at 907 (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 972 (2d Cir. 1989)); see also Freedom Holdings, 408 F.3d at 114. The movant is required to establish not a mere possibility of irreparable harm, but that it is "likely to suffer irreparable harm if equitable relief is denied." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990).

11

"Likelihood sets, of course, a higher standard than 'possibility.'" Id.

Comverse contends that, if the Court does not enjoin ATI from proceeding with the Chilean Action, Comverse will suffer irreparable harm by virtue of the resultant deprivation of its contractual right to arbitrate its claims. Comverse's claim of irreparable harm can be divided into two related components, the first pertaining generally to the entirety of the Chilean Action and the second specifically to the Chilean Preliminary Injunction proceeding. Generally, Comverse claims that it will suffer this harm by being compelled to litigate in contravention of the arbitration clause in the VAR. More specifically, Comverse argues that any ruling by the Chilean Competition Tribunal on ATI's application for a preliminary injunction in the Chilean Action threatens to render the Pending Arbitration a hollow formality.

It is indeed the case that courts in this district have found that the deprivation of a party's contractual right to arbitration constitutes irreparable harm. See, e.g., Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., 962 F. Supp. 385, 390 (S.D.N.Y. 1997); Int'l Fashion Prods., B.V. v. Calvin Klein, Inc., No. 95 Civ. 0982(JFK), 1995 U.S. Dist. LEXIS 2598, at *4, 1995 WL 92321, at *2 (S.D.N.Y. March 7, 1995). The deprivation of the right to arbitration is of particular weight in light of

12

the "strong federal policy favoring arbitration as an alternative means of dispute resolution." Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001); see David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London), 923 F.2d 245, 248 (2d Cir. 1991).

However, the Chilean Action will not deprive Comverse of its contractual right to arbitrate its disputes with ATI. As this Court has stated before, "it is fundamental that arbitration agreements are creatures of contract law." Energy Trans., Ltd. V. M.V. San Sebastian, 348 F.Supp.2d 186, 201 (S.D.N.Y. 2004)(internal quotations omitted). It follows that only the parties to the arbitration agreement are bound by the agreement. Sec. Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 325 (2d Cir. 2004); NBC v. Bear Stearns & Co., 165 F.3d 184, 186 (2d Cir. 1999)("because commercial arbitration is a creature of contract, only the parties to the arbitration contract are bound to participate."); PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996)(citing AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986)). As described above, the Chilean Action is an action which the Chilean National Economic Prosecutor may bring against Comverse; except for the request for the Chilean Preliminary Injunction, ATI itself will not prosecute this action. The National Economic Prosecutor is not a party to the VAR and so is not

bound by the arbitration clause therein.  Accordingly, as Comverse has no contractual right to arbitrate a dispute with the Chilean National Economic Prosecutor, Comverse is not deprived of this right by the absence of a preliminary injunction.

Comverse's specific contention is that the Chilean Preliminary Injunction would cause Comverse irreparable harm. The Court will not consider this contention because it is no longer relevant now that the Chilean Competition Tribunal has decided that the Chilean Preliminary Injunction will not issue. Regardless of whether the issuance of the Chilean Preliminary Injunction likely would have caused Comverse imminent, irreparable harm, the Chilean Competition Tribunal's decision has nullified that potential cause of harm.

Comverse has failed to carry its burden of demonstrating that it will likely suffer irreparable harm if this Court does not enjoin ATI from proceeding with the Chilean Action, let alone any as-of-yet unspecified legal action.  This is particularly the case given the public interest implications of the requested injunction:  as discussed above, the National Economic Prosecutor is charged with safeguarding free competition in the markets.  Absent a showing of imminent, irreparable harm, this Court will not consider the other factors for the issuance of a preliminary injunction, see Freedom

14

Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005), including the factors for the issuance of an anti-suit injunction. See China Trade & Dev. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987).

## CONCLUSION

For the forgoing reasons, plaintiff's motion is denied.

**SO ORDERED.**
**New York, New York**

October **23**, 2006

_____
U.S.D.J.

Copies of this Order have been sent to:

Deborah Skakel, Esq.
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Neil Edwin McDonell, Esq.
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177